IN RE ESTATE OF CLARENCE WOOD.

GEORGE C. LAWRENCE, Administrator de bonis non, Appellant, v. ETTA LEE SHEPHERD et al., Appellees.

No. 46124.

DECEMBER 15, 1942.

Remley & Remley, of Anamosa, and A. G. Keyes, of Cedar Rapids, for appellant.

George C. Gorman, of Cedar Rapids, for appellees.

STIGER, J.—Clarence and Sarah Wood were brother and sister. Neither married and they lived together on a farm jointly-owned by them for many years. In their later years they moved to Anamosa, where they lived together until Sarah died in 1927 at the age of 60 years. She left a will giving Clarence a life

estate in all her property, and appointed him executor. He qualified and acted as executor of her estate until his death in 1937.

We cannot agree with the proposition advanced by appellees that the language of the will is so plain and unequivocal that there is no room for construction. Its meaning is doubtful, and, in ascertaining the intention of the testator, we must take into consideration his position, the situation existing, and the circumstances surrounding him at the time he executed the will.

In 1930, and when he was acting as executor of the estate of his sister, Clarence Wood was swindled out of $40,000 in Mexico City, Mexico, by a confidence game perpetrated on this credulous and trusting old man by some professional cheaters who first won his complete confidence. They convinced him that in order to consummate a business deal that would net a profit of $240,000 it was necessary that they have $40,000 in cash. He was promised one third of the profits. He returned to Cedar Rapids with one of the swindlers to raise this sum of money. He turned over to his companion about $32,000 of his own money, and, being unable to obtain the balance on his own credit, used about $8,000 belonging to the Sarah Wood estate.

In March 1936, he made his last will and testament. We will now refer to the more material portions of his will and codicils. Paragraph 3 reads:

"If it is found the estate of Sarah V. Wood, including her two-fifths equity in the home farm and two Argentine Government Bonds, one for five hundred ($500) dollars and one for one thousand ($1,000) dollars, should prove insufficient to pay her bequests in full, then it is my wish and will that a sum sufficient to pay them all in full be deducted from the proceeds of my estate and applied to cover those deficiencies * * *."

In paragraph 5 he bequeathed $4,000 to his cousin, Etta Lee Shepherd, an objector, and bonds and stock of the face value of about $2,000. When the will was executed, she was a resident of Spokane, Washington. On August 4, 1936, the testator executed his first codicil and in the first paragraph thereof increased the cash bequest to Miss Shepherd to $5,000, and stated:

"It is my will and I direct that this bequest of five thousand

($5,000.00) dollars be paid first of all and in full, regardless of any bequests made by me to any other legatee under my Will, it being my wish and intention that this bequest of five thousand ($5,000.00) dollars be made a preferred one.''

On August 27, 1936, he made his second codicil, in which he made additional bequests to Miss Shepherd. At this time, apparently, she was residing in the home of the testator in Anamosa, as she filed a claim for $5,000 as housekeeper, nurse, and companion covering this period.

The position of appellant is that the testator intended the payments which he directed in paragraph 3 to be deducted from his estate to pay deficiencies, if any, in bequests of his sister, and these payments were to be made prior to the payment of legacies, and appellant especially contends that they were to be paid prior to the legacy left to Miss Shepherd by the will of the testator.

The claim of appellees is that the first codicil, in stating that the bequest to Miss Shepherd in the sum of $5,000 should be a preferred one and be paid first, ''regardless of any bequests made by me to any other legatee under my will,'' shows the testator intended this bequest to have priority over all bequests and over the payments to be made under paragraph 3; that the said payments were in fact ''bequests'' to the legatees under the will of Sarah Wood, and that by said paragraph he made such legatees his own legatees.

The only issue passed on by the trial court was the question of a proper construction of the will, and it found that the construction placed on the will by appellees was correct and denied the application.

We are of the opinion the construction placed on the will by the administrator of the estate of Sarah Wood, deceased, is correct.

At the time Mr. Wood executed his will and codicils he had not made restitution to the estate of his sister for the loss occasioned it by the conversion to his own use of the securities of her estate.

Mr. Wood provided in his first codicil that his bequest of $5,000 to Miss Shepherd should be a preferred bequest and

should be paid in full regardless of any other bequests in his will. We are of the opinion that the payments provided for in paragraph 3 were not "bequests made by me to any other legatee under my will" and that the paragraph does not make the legatees of Sarah Wood the legatees of testator. The words "bequest" and "legacy" properly and ordinarily mean testamentary gifts of personal property. There is nothing in the will that suggests testator did not have a full understanding of the accurate meaning of the words or that he used them otherwise than in their appropriate sense. There are eight bequests of personal property in the will and in making these bequests the testator states, "I give and bequeath," etc. Throughout the will and codicils he refers to his gifts of personal property as bequests. He properly refers to the gift of real estate to Miss Shepherd as a "devise," and in disposing of his residuary estate he said:

"All the rest, residue and remainder of my estate of every kind and nature, real, personal and mixed, I give, *devise* and bequeath as follows:" etc.

But, in paragraph 3, he carefully avoids the use of the words "bequest," "gift," "bequeath," or "legacy." He states therein that a sum sufficient to pay the deficiency in the bequests of his sister in full shall be deducted from the proceeds of his estate.

His third and last codicil, the last expression of the intention of this testator, refers solely to the provisions of paragraph 3 and provides that the bequest of Sarah Wood to the Anamosa Public Library in the sum of $10,000 be made effective to the amount of $3,000 and no more. He then states in said codicil:

"That if the assets of the estate of my sister, Sarah V. Wood, shall not be sufficient so that her bequest to said Library can be paid from assets of her said estate, available for said purpose to the full extent of three thousand ($3,000.00) dollars, then the deficiency so found to exist in the available funds for payment of said bequest by my sister's estate, *shall be taken from my estate.*" (Italics supplied.)

At the time the will was executed in 1936, his sister had been deceased for many years, and there is nothing in the will to indicate the testator desired to make a gift to the estate of his sister or to make her legatees the objects of his bounty.

When the will was executed, he knew he had not ·made restitution and keenly regretted the loss he had caused to the estate of his sister. A niece of Mr. Wood's testified to a conversation that he had with her husband prior to the time the will was made in which he related the methods used by the swindlers in cheating him out of the money. We will refer briefly to this testimony:

"He told about having met these men in Mexico City, about them having large investments, and that they were going to transact some business that would make a great deal of money. This man told him that he was really a millionaire but all his money was tied up. That he would not be able to raise very much ready cash and he wanted to know of Mr. Wood if he could, and he thought the matter over and decided he did not think he could, and then, giving it a little more consideration, he decided he could, but would have to come back to Cedar Rapids to do so. He told my husband in the conversation in the kitchen that he had lost $40,000.00 and he said he had taken the bonds that belonged to Aunt Sarah and that he had to borrow, and mortgage the farm. He said the reason he let these men have the money was because he expected to double his investment and that his share of the proceeds was to be $80,000.00. He told this to my husband that day. He told my husband it was hard for him to realize and be convinced that the money was really gone and he assured my husband that he had no intentions—his only reason for taking it was because he could double his estate and that he would have more money to leave his heirs. He said how badly he felt about it, that he was ill. He was very sad about it. He said to my husband that he was very sorry and he said he could not believe that he could have been taken in by these confidence men. * * * He was white, his face was drawn and he was very sad and very much perturbed."

In stipulating that the payments provided for in paragraph 3 "shall be taken from my estate" he did not intend to

make a gift—a bequest. He was making amends, to the extent stated in the paragraph, for the wrong he had committed against the estate of Sarah Wood, and directing the transfer of funds to the estate of Sarah Wood or her legatees in recognition of and at least in part payment of his debt to her and her estate. The will reflects the state of mind of testator at the time of the above conversation and he was far more concerned in making restitution than in giving his property to collateral heirs and acquaintances.

Here is a further consideration that supports our conclusion that paragraph 3 does not contain a bequest or legacy within the meaning of paragraph 1 of the first codicil giving the bequest to Etta Lee Shepherd priority in payment over all other bequests.

Paragraph 1 of the will provides for the payment of debts. Paragraph 2 provides that no bequest set out in the will shall be liable for any debt or claim held against "any beneficiary mentioned herein." Paragraph 4 provides for the sale of real estate.

The first bequest is made in paragraph 5 of the will to Miss Shepherd, and in subsequent paragraphs are found the remaining gifts of personal property. No words denoting an intention to make a gift appears in any paragraph preceding paragraph 5.

We hold testator intended the payments referred to in paragraph 3 to have priority over all bequests but in an amount not exceeding the net loss caused the estate of his sister by his conversion of its assets.

II. Appellees claim appellant alleged in his petition that paragraph 3 of the will created a debt or obligation against the testator's estate in favor of the estate of Sarah Wood, and, as appellant failed to file a claim against the estate of Clarence Wood under sections 11964, 11965, and 11972, 1939 Code, which provide respectively for presenting demands not due and contingent liabilities and the time in which claims must be filed, therefore appellant cannot be heard on this application to construe the will. This contention is entirely without merit.

Appellees assume a testator may create a debt by his will.

Granting the assumption, appellant did not allege that the will created a debt nor did he seek to recover against the estate of Clarence Wood on a debt. Appellant's sole contention was that testator intended that a sum sufficient to pay deficiencies, if any, in Sarah Wood's bequests, be deducted from the funds of his estate before any legacies were paid, and that the provisions of said paragraph did not constitute a bequest within the meaning of the first paragraph of the first codicil which made the bequest to Etta Lee Shepherd preferred over other bequests. The application stated:

"That it was the intention of Clarence Wood at the time he made his will and codicils to treat the deficiency in the legacy of Sarah Wood the same as an obligation or debt and intended that the said deficiency should be paid to the beneficiary of the estate of Sarah Wood before any legacies under his will were paid."

This litigation was brought to construe the will and determine the manner in which the administrator of the estate of Clarence Wood should distribute the assets of the estate and is not brought to collect a debt "created by the will of the testator." The sections referred to have no application to this case.

█ III. Another proposition of appellees is that appellant filed a claim against the estate of Clarence Wood in the sum of $8,800 in June 1938, based on the conversion by Clarence Wood of the securities belonging to the estate of Sarah Wood; that in March 1940, and prior to the institution of this suit, the claim was compromised and allowed in the sum of $6,000, which settlement was approved by the court; that the stipulation of settlement provided, "It is agreed that this stipulation is in full settlement of all claims that the estate of Sarah Wood, deceased, has against the estate of Clarence Wood, deceased;" that all claims of the estate of Clarence Wood having been settled and compromised by said stipulation, appellant has lost and waived any right he may ever have had to seek a construction of the will, and that appellant is now asking the court to determine a moot question.

The stipulation of settlement entered into by the administrators of both estates reveals that it was the opinion of

all parties thereto that after allowing certain credits and offsets to which the estate of Clarence Wood was entitled, the sum of $6,000 was the true amount of the loss caused the estate of Sarah Wood by her executor, Clarence Wood.

Appellant states in argument:

"The only bearing that the payment of the claim has upon the will is that the amount paid on the claim simply reduced the amount of the deficiency so that the executor of the Clarence Wood estate has a less amount to make up in the deficiency than he otherwise would have."

His position apparently is that the testator intended to pay any deficiencies in the bequests of his sister regardless of and in addition to any restitution that might be made by his estate after his death. We cannot agree with this view of the will.

We are convinced that testator's only purpose was to pay deficiencies in the bequests of his sister that were caused by his conversion of the assets of the estate to his own use. There are statements in the record that indicate the $6,000 claim had been paid at the time of the trial. It has been allowed as a third-class claim and must be paid prior to the payment of legacies under the will of Clarence Wood. When restitution is made, deficiencies in the bequests made by Sarah Wood, if any, will not be due to the conversion of the assets of said estate and appellant cannot recover an additional amount under paragraph 3.

Appellant complains of the ruling of the trial court sustaining appellees' motion to strike a deposition offered by appellant on the ground the relation of attorney and client existed between the witness and Clarence Wood. The ruling was clearly correct. —Reversed and remanded.

WENNERSTRUM, C. J., and SAGER, MILLER, HALE, and BLISS, JJ., concur.

MITCHELL and OLIVER, JJ., dissent.

MITCHELL and OLIVER, JJ. (dissenting)—We would affirm the order of the trial court.